The Hawaiian Telecom, Inc. v. Hawaiian Telecom, Inc. v. Hawaiian Telecom, Inc. Okay, the next argued case is number, let's see, 16-1082. Broadband iTV, Inc. v. Hawaiian Telecom, Inc. Okay, when you're ready, Mr. Tetchy. Yes, I am, Your Honor. Good morning. Proceed. May I please the court? Counsel, my name is Fred Tetchy, and I represent the patent owner, Broadband iTV. The claims in this case, like those in Bascom, provide a technological solution to enable the switching of control of how the electronic programming guide gets populated from the cable operator to the content provider or publisher, yet leaving the EPG function, or the electronic programming guide function, at the operator's video-on-demand platform. Let me see if I can understand this. You're not claiming that the uploading of the metadata together with the video is the invention. If I understand correctly, your invention that you're claiming here is the idea that you're automatically uploading the metadata and populating the EPG with the data that's there, right? Well, I think if I understand Your Honor's question, we claim the stated objective, or the end sought, is the ability for the content provider to upload their content onto the video publisher's system. That's right in the first two lines of the claim. And to integrate it with the EPG. I'm sorry? And to integrate it with the EPG. And to have it integrated into the EPG, whereas in the prior art system, the EPG was updated or done by the cable operators themselves. Okay, so it's done automatically. The problem is, is there anything here more than an idea of automating it using a generic computer? I mean, the patent doesn't tell you how to do it. But it does, Your Honor. It gives a detailed recitation. If we turn to page 15 and 16 of our reply brief, it goes through. It provides a detailed how, with detailed means, of how to achieve the stated objective, or the end sought. Which the end sought was the ability for the content provider to upload video onto the operator's system. This element about uploading along with the metadata, the reason why that element, or that section of it, and we'll talk about that in a second, is important, and it goes to the inventive pieces. Take me to 15 of the reply brief. Show me where it tells you how to automate this, as opposed to just saying it can be automated using a computer. Well, the claim tells you how to achieve the ultimate objective, which is the system that I've described. Starting on the first step, step A, element A, how the uploading of VOD content is limited and how it's done. It's done in a digital format, via an online network. That's not... But, yes, Your Honor, I'm asking... It's not telling you how to do it. What I'm asking is where does it tell you how to do it, as opposed to doing it as a good idea. It tells you that, how to do it, right in the next step. Well, first of all, you have to do it along with the metadata. B tells you how to do it. B is the technological solution. How and where the video is converted, it tells you it has to be converted, and that the title has to be linked. And then these converting and linking steps tell a person of ordinary skill in the art how to go from step A to step B. I mean, from step A to step C. So basically it tells you to do it, and someone of ordinary skill in the art would know how to do it. I'm sorry? It tells you that you want to automate it, and that someone of skill in the art would know how to do it. Well, no, Your Honor. I'm saying no, Your Honor. What the claim tells you ultimately were the long, detailed recitations of steps of how, all of which, under BASCM, are a nonconventional arrangement of elements, one of which is arguably not in the priority. Let's just back up a moment. Suppose all that the PET specification said is automate what used to be done manually, and someone with skill in the art would know how to do that using a computer. Let's just assume that's what we had. Would that satisfy Alice? Well, I'm not sure if I understand your question. Is your question, Your Honor, is if the abstract idea is automated, then under the first step of Alice that would arguably be an abstract idea. Then from there we have to go to the claims to determine whether or not they're sufficient. In my hypothetical, the claims and the specification don't tell you how to do the automation. It just tells you to automate something that was done manually before. That's my hypothetical. Right. That's your hypothetical. Would that satisfy step two of Alice? Okay. Under your hypothetical, Your Honor, where it's an abstract idea of just automate it, and there's nothing in the claim that tells you how to automate it, then the answer is that would be invalid under Alice. Yes, but that's not the situation here. First of all, irrespective of whether or not this is an abstract idea, part of my argument is focusing on step two. The claims provide the technological solution to a problem, and the specification goes far beyond that. If you go to column 17 of the specification, it talks about what the solution, what the problem is. This automating is something that the invention involves. It's not what the invention is directed to. What the invention is directed to, which is what this court has told us in Baskin we need to look at, is really set forth both in the claim, the first two lines of the claim, and the paragraph in column 17, which is page 360 of the appendix. Which paragraph? Beginning at line 23, by the method of the present invention, the title and hierarchical address assigned by the publisher of the program is automatically carried over into the TV electronic programming guide following the same hierarchical addressing indicated by the publisher of the content. Like Baskin, we're now changing the control of these hierarchical addresses from the cable operator to the content provider. The publisher selects categories and subcategories, again a shift in control, for categorizing the title of the video content from the EPG categorization scene presented by the digital television service provider for the listing of titles on one of the VOD channels. With this method, vast numbers of content publishers anywhere on the internet can upload their programs with a minimum of conversion and handling steps by the digital television service provider. So just like Baskin, which shifted the filtering of the internet system from the ISP to the end user, but left the filtering system on the ISP or vice versa, this system, this claimed method, shifts control of how the electronic programming guide gets uploaded to the content provider. It's their movies. They want to make sure, and this is talked about in spec, that people who watch this stuff can find their movies and their tees. Yeah, but this doesn't describe how it's automated. Well, but judge, again, automating is just one step. It does tell you how to achieve. Remember in electric power, this court has said it's not enough to just say, it's not enough to, there's a distinction between whether the claims merely recite the end sought versus a specific means to achieve those ends. And in this claim, again, if we go back to page 15 and walk through these steps, the first of which the district court found was not in the prior art sufficient to deny the defendant's motion for summary judgment on invalidity under 102 and 103. The patent office found that step one wasn't in the prior art in refusing to institute an IPR filed by a third party, in this case, and denied Hawaiian Telecom's CBM petition under 103 grounds. So this first element is not in the prior art. It tells you how with specific details sufficient to establish that this is a collection of nonconventional arrangement, of nonconventional arrangement of elements in the prior art. You upload it. It has to be over an online network. It has to be over a web-based content management server. Now the defendants and the petitioners argue that that's just any old server because of the claim construction that we asked for. But given the district court's determination denying 102 and 103 and the patent office's determination that uploading along with the metadata was novel in that it was not in the prior art, it was therefore unconventional. That's a nonconventional use of a server. That's the first part. It tells you it has to be along with a title of hierarchical address. It has to include the metadata. It has to be converted. Can I ask you, did your expert submit or did you argue that transmitting a file along with metadata was something new or is it more particular to transmitting this kind of file with this kind of metadata? What our expert opined, and I believe the record below was, and what the district court found and what the PTAD found, was that uploading a video file in a VOD system, which is what we're talking about here, was not taught in the art. That was an element that was missing from the art. That was the grounds upon which Judge Kaye denied. If you remember my question, can you answer it? No, I don't, Your Honor. Did you contend or do you contend that transmitting a file, an electronic file, along with its metadata was old or new, was unconventional, was something that this patent says to do for the first time? Never been done in any context. No, what we contend, Your Honor, is that this patent has claimed with countless elements. I've only read through three. There's additional ones. No prior art reference achieved the stated objective using these detailed steps that are set forth in the claim. What I'm trying to do is separate the kinds of innovation that, no matter how spiffy, are not patent eligible from the kinds that are. Now if transmitting a file with its metadata was old stuff and what's allegedly new here, what the arguable advance is, having this particular arrangement of the content of the data, maybe that's the kind of arranging of content or selecting of content that simply is content selection, which doesn't matter how innovative it is. It's just within the informational realm. Your Honor, I'm trying to answer your question, and what I'm trying to do is because this is the way I have to look at these things. If we're talking about step A and we're trying to determine what this invention is directed to, what is the character of this invention? Under ENFISH, that definition of what's the character of the invention, what is it directed to, not what it involves. It involves this step that Your Honor is asking me about, which we believe is one step of a number of steps. That one step happens to be novel. But that's not what the invention involves. I mean that's what the invention involves. That's not what it's directed to. What it's directed to has to be tethered to the claims. And quite frankly, Your Honor, in his claim construction opinion, Judge Kaye, I thought, did an excellent job, albeit talking about novelty and saying that the claim is directed to, well, he said novelty. But really under these facts and in this claim, this claim is directed to creating a method for uploading videos via the internet with accompanying metadata which allows the videos to be automatically listed in a cable company's EPG for viewer selection. That's at the appendix at page 20. That's what he indicated the invention was directed to. So if I understand Your Honor's question, I'm trying to answer Your Honor's question. If you're asking me if this is the abstract idea, uploading it along with the file, that's an abstract idea. And the invention does involve that, but it's not directed to that. And under ENFISH, that would not meet the step one test. We have to determine what it's directed to to determine whether or not it's an abstract idea. But even if that was the abstract idea, Your Honor, the one that you say uploading along with the video, we then need to go to step two which says is there enough information in step two? Is this a technological advancement? We've already talked about that. Is there a detailed recitation of how you upload over the internet along with the metadata, which again is not the stated means? And I go back to page 15, not to sound like a broken record, but in page 15 we set forth kind of detailed steps in A. In B, you have to convert. You have to link the title. And then in C, content is listed in the EPG. It has to use the same hierarchically arranged categories and subcategories as used in the uploaded metadata. The bottom line is that what this claim and what elements A through C and D and E, I didn't get to D and E because they have to do with what the user does on the end, how it's displayed to the user. Again, a bunch of collection of elements in a nonconventional arrangement. The bottom line is that what A through C teach and what the invention is directed to is uploading the video along with the metadata, converting the video, and linking the title so that you're using the same metadata to populate the EPG. That's the detailed recitation in the claims. And under Baskin, we have to show that that's a nonconventional arrangement, and the district court's denial under 102 and 103 creates, at the very least, an issue of material fact that element A, uploading along with the metadata, which the patent office found was not in the prior art, is unconventional. And so the 101 decision, I'm not saying because the court denied on 102 and 103 that somehow we win on 101. The 101 decision is informed. The Baskin test is informed that this is a nonconventional arrangement because at least one of the elements is not in the prior part. Would I be remembering incorrectly or correctly that it's agreed here, maybe even described in the patent, but in any event agreed here, that a human being before this patent was doing all of these things, taking the title and the title is in some two-decimal system hierarchy and linking it so that when the user remarkably sees a list of titles, the user can select one? No, that's not agreed. That's this kind of false narrative that the defendants have spun about this. The intervening prior art, the prior art of record in this case, Kearney Pegasus, which was a Time Warner cable system, and Thomas were all automated online computerized systems. I'm sorry. I guess I was sort of trying to get back to where Judge Dyke, I think, was starting. When a human being did this stuff, was the human being doing all of these steps, and then what this says is we can do it in an automatic way? No, no, no. That's what I was trying to answer your question. No. At the claim construction hearing, there was testimony from the inventor about how in ancient days the tapes were uploaded manually. The defendants' expert, and this is at page 55 of the appendix, as cited by Judge Kaye, the defendants' expert opined, and there's no dispute about that, that by 2003 all of these systems were automated. The prior art was automated. There was no human activity at this point. Well, there was limited human activity, but the intervening prior art systems of record in this case, again, Thomas, Kearney, Pegasus were all online automated computerized systems. So the metadata then was associated with the video, right? It could have been, but again, it wasn't done by the content providers. It was done to the extent that there was metadata. The use of the metadata wasn't done by the content provider, but the content provider provided the video with the associated metadata, right? In some instances, yes, Your Honor, and in some instances, no. But in some instances, yes. Well, I said that. So that doesn't sound new. Well, but again, that's not... The inventive concept here is the technological solution of this invention was an improvement over the prior art technical systems. Just like in Deere, this is an improvement over existing technical systems. Every one of these prior art systems was an online system. Some of it used metadata. That was another... Metadata was one of the elements that was known in the art. Now, under Baskin, just showing that this is a collection of elements that are old in the art isn't enough. The question is, are they arranged in a nonconventional manner? And in this instance, in this case, the improvement, the invention, the improvement, the reason why the PTAB denied the IPR, the reason why the PTAB denied the CBM, the reason why the Patent Office issued this patent in the first place, and the reason why the district court denied summary judgment, the improvement was the recognition that the control needs to be with the content providers, and that created a technological solution using a non... So the difference is who does it? That's the end result. How it's done and the detail of how it's done is what's in the claims. And there's a difference. Let's hear from the other side, and we'll save you some little time. Thank you. Okay, Mr. Verhoeven. Good morning, Your Honors. May it please the Court, Charles Verhoeven on behalf of Pelley Time Warner Cable. Ms. Rao is here on behalf of HTI. We've agreed to split our time, and I'm going to go first. The district court's Section 101 order falls squarely within this court's precedence. And if I could allude to a point that Judge Toronto made, even in the opening brief of the appellant at page 14, there's an admission that the steps in the concept that's contained in the 336 patent was done manually before the filing of this patent. So in their own brief, they admit that there were physical videotapes and that there was information which the appellant admits was metadata that was transported physically together from the content providers to a distributor. And then the distributor would manually type in the metadata and upload the video. And this patent merely puts that process on the Internet. And the only thing that I can glean that they're saying in the patent that's new in the prosecution history is to use the same metadata so that you can automate the process. By the way, I- Automating a process which is done manually could sometimes be very inventive. There's no question about that. So the question is whether they have provided some new mechanism for automating this or whether this is just a patent on the idea of automating. Yes, Your Honor, that's absolutely right. And if you look at the cases that have been decided by this court, those cases where the court has reversed a finding of ineligibility under 101, that was precisely the case where there was an idea that arguably was abstract, but there was something innovative about it and something that was a technical problem and a solution. So, for example, in Your Honor's statement, if you just say automate it, perhaps somebody tried to do that and discovered you couldn't just automate it in a way that was well known in the art and there was some trick you had to use. Or perhaps someone said that, for example, in I think it was BASCOM, there was a particular type of filter that was used in a particular way that resulted in better technical functionality over the art. In DDR, it was something that was done differently from the way you would normally do things on a computer. And there's another case where you're talking about a different way of structuring a database. And then the court there found that that was inventive and rendered the abstract idea eligible. Here, we have none of that. You just look through the claims and the steps of the claims are very similar to Alice where you're just talking about functional claiming. So you're enabling the upload of the video content in metadata. You're not even uploading it. You're just enabling it. And you're enabling it to what? A server. You're converting it to what? A standard digital format. Well, that can't be inventive. It's a standard digital format. You're listing a title of the video content in a guide using hierarchically arranged categories. Well, that's not inventive. That's not something that's new computer innovation. That's just a methodology, a function, and you can use regular computers to do that. You're providing a TV service subscriber access to it, and you're enabling the retrieval of the video content selected by the TV subscriber. That's claim one. Is there – I don't remember. Is there material in the specification? I'm focusing specifically on the – I guess – what is it? Step C, listing the title of the video content, about how to get a hierarchical listing of metadata in what the content provider is sending the cable company into the differently configured cable company system for producing its own electronic program guide so that I know what to choose, what my options are. Not that I'm aware of, Your Honor. And I would just note that in Versada, the abstract idea was, quote, well, the hierarchical language in the claims here, similarly, doesn't create any sort of innovation in the product or in the patent. It's just merely saying what you do, what the function is. So just like Alice, this is a situation where the alleged innovation is this abstract idea of using the same metadata so that you can automate a process of uploading. So it goes right into the electronic program guide. But that's an idea. And that is not eligible unless there's something that's an inventive concept for how you do it. And here, there is no inventive concept for how you do it. Really briefly, in the papers, what we see is a shifting sands approach by the appellant on what's the inventive concept. So below, the district court judge specifically said, what do you claim under element two as the inventive concept? And the only thing that counsel identified was the web server. That's it. They don't even argue that, really, up here. And if you look at the claim language, it's a— The claim construction. Well, of course, the claim construction. But you don't even need to go there. I mean, the claim language just says that it is web-based and then manages content. Well, all servers manage content. And hooking the server to the web is not something that's new or unique in any sense. And then after we get beyond that, and I'm going to finish real quick here, in their brief on appeal, they sort of abandon that. And they say it's along with and automated. But they've admitted that submitting metadata along with the video was already done manually in the prior art. And now counsel is saying it was done electronically as well in the prior art. And then finally, they refer to the specific equipment as if that will somehow save the day. But all that's identified is a set-top box, a generic TV remote control, the web server, and something vague called TV equipment. So referring to that—referring to tangible elements and functional claiming combined that are common does not elevate this patent to have an inventive concept. And therefore, Your Honors, it is not eligible for being processed through the patent process under Section 101. Thank you very much. Thank you. Ms. Rao? Thank you, Your Honor. Sasha Rao, representing Hawaiian Telco. I would like to begin by addressing some of the questions the court asked. One question was, is this claimed invention simply about the idea of automating, or is it something specific? And we submit that the invention, as claimed by the patentee, is simply about the idea of automating. And this relates to a question that Judge Toronto asked, which is, is there any record evidence of this? And we have a few citations. One is at Appendix 8610, we asked BBI TV's expert what the invention is about. And the question was, so the invention is automating steps that were conventionally performed, but automating it using the Internet. Their response was, automating it, yeah, automating it and transferring the content. I mean, that's, I guess, where you would say the heart of the invention and the details, or at least the claim elements. So we submit that this is a case where it's simply the idea of automating something, and under Alice, that is not patent eligible. Now – Again, with extremely heavy emphasis on the word simply, because there are lots of automating like driving, for example, that we've seen indicate in a specific enough way how to do it would be in the heartland of eligibility. So the problem here is, if there's a problem, is the lack of specificity about how to do any of this. That is correct, Your Honor, and to the extent that any specificity is provided, it is to do it the conventional way, use the routine way. And again, at Appendix 3701, at the technology tutorial, BBI TV's inventor explained to the court the steps that were performed in the claimed invention. And at 3701, at lines 13 through 20, he describes how the first step, Step A of Claim 1, is done online in his invention. And then as for the rest of the process, he says it's the same as we saw before when he described the way the prior art did it. So all the other steps in the claim are exactly as before. So this is not like Baskin. It is exactly a conventional arrangement of the claimed steps as they were done before, only the idea was, let's put it on the internet. Now, I'd like to specifically address counsel's argument that the inventive step is the requirement of uploading video content along with metadata, one of the first questions you asked. And first of all, there's nothing in the Supreme Court or this court's precedence that requires a finding of patent eligibility simply because there's some novelty in the process. In fact, a novel process can still fail the requirements of Section 101, and here Fluke and Ultra-Marshall are on point where patent claims directed to novel processes were found invalid because they were directed to abstract ideas. I thought he agreed that it wasn't novel to upload the metadata together with the video content. We don't believe it was novel because we believe actually – I hear your opposing counsel admitted that. Yes, Your Honor. So? So another point that is worth mentioning here is that – – about some kind of assertion of newness, to get away from statutory language, in uploading content along with something. What were they asserting? I was unclear whether they were saying nobody has ever – and by upload, I don't know that that's any different from send. So electronically sending content along with metadata. I didn't take it that they were saying nobody had ever done that before. It sounds kind of implausible, but that the point was narrower that nobody in this context had ever sent a movie with this particular metadata structured in a particular way. Can you just clarify what the record indicates about their contention? Your Honor, as far as I'm aware, the record, especially at Joint Appendix 3697, lines 11 through 13, indicates that in the conventional video-on-demand workflow, metadata was provided along with the videotape in paper form. And that's what Mr. Verhoeven described as well. And so, as far as the record is concerned, it agrees completely with what Mr. Verhoeven explained and what the patent shows, that these are simply conventional steps that are being automated. I'd like to just make one point on preemption, if I may. In BBRTV's summary judgment brief against Hawaiian Telecom, BBRTV argued that Hawaiian Telecom met the claimed Step 1A of the patent by virtue of entering into a contractual agreement with a third party. And BBRTV argued that Hawaiian Telecom did not have to actually perform any uploading. And it was sufficient that Hawaiian Telecom had entered into a contractual agreement with a third party that might have considered using a web server or the internet somewhere in its video-on-demand workflow. And we submit that that is exactly the kind of invention that satisfies all of ALICE's requirements and should be found ineligible. And if the court doesn't have any questions, I'm going to... Thank you. Thank you, Ms. Ralph. Can we just show everybody the time? Judge, I want to make something clear. I did not say, and if I said I misspoke, there was no evidence whatsoever in the record that any prior art system uploaded metadata along with the video. And in fact, as counsel was talking to you about, in the old prior art systems, which is the ancient history, when the videotapes were delivered, information about the movies were on a piece of paper. That goes, that is, the intervening prior art was the prior art of record. After 18 months of litigation and two post-grant review proceedings, these defendants said three pieces of prior art. One was, the district court found, was a system, a method for providing storage data on servers in an on-demand media delivery system. One was a system and method for constructing, delivering, and display of Internet TV content. And one of them was the Pegasus, which was the Time Warner legacy system, which was a set of specifications developed to facilitate VOD operations. Their expert testified, it's in page 55 of the appendix, that by 2003, all of these systems had already been automated. And the district court specifically found, in denying their motion for summary judgment, that uploading along with the metadata was not in the prior art. That's at pages 50 through 66. And so this, this, this, what's troubling to me, Your Honor, is that Alice and this court give us a way to figure out whether or not something's patent eligible on the one. So what's inventive? Let's assume that it was new. What's inventive about sending the metadata along with the video? Judge, the answer to your question is that the search for inventive is step two. And that requires looking at every element of the claim, and not just elements. As I heard Counselor Time Warner-Cable come up and say, this is old, this is old, and this is old. That's a direct violation of this court's teaching in Bascom that just pointing to the fact that elements are old in the art is not enough. The step two inventive test requires that there's a technological solution with a detailed how. And this claim goes from column 21, line 7 to the top of column 22. That's a, that's a detailed recitation of how the ends are met. And irrespective of whether or not every one of them were old in the art, they have to show that not only were they old in the art, but that they were arranged as they are arranged in the claim. The step two requires that we look, we just, I don't want to say we, it's not proper to just look and say, well, what was the inventive concept? The inventive concept is established, inventive is accomplished by step two, which is a recognition of the detailed how. There was no dispute, I mean, there was never any evidence below that prior arts were uploaded with the tapes. And Judge Toronto, one of your questions I think that you were asking me about, there's specification language actually in there that answers your question, Your Honor. It's at column 16, line 37 through column 21, line 17 through, or column 17, line 21. The fact of the matter is, is that the first step is to determine whether or not this was an abstract idea. If it is, we don't believe it is, but if it is, then does the step two analysis provide sufficient technological information that detailed how, of how the ends are met? And I won't walk back through step two with you, but the bottom line is that, Judge, it's unfair to my client to allow these defendants to kind of come in here and just say, well, the idea was this uploading along with the metadata. That may be what it involves. That may be one step, but that's not the invention. That's not what the invention is directed to. Is there something different between, substantively different between the word uploading and sending electronically? I believe, no, I believe uploading is sending electronically. Okay, so well before, what's the priority date of this thing? Maybe 2004? Yeah, well before 2004. I'm pretty sure I was sending electronic documents around, like Word documents, that had metadata in them. You were, Judge. So it must be the context of the video world that you're saying there's something new and not found in the prior art, at least for summary judgment purposes, about sending a particular kind of document, call it an electronic file, a movie, along with the metadata that belongs to it. Because that general concept of sending a file with its metadata was around. Correct, it was around, Judge, and that's what, remember, Baskin says there are a lot of pieces lying around. For 102 and 103, we go all the way back to Judge Markey's decision that only the Almighty creates with new pieces. Man uses things that were lying around for 102 and 103. For 101, we have to determine whether or not something is conventional. What's the benefit of sending the metadata together with the video? I'm sorry, Your Honor? What is the benefit of sending the metadata together with the video as opposed to separately, electronically? It solves the technological problem of the prior art automated systems where the content providers did not have the opportunity to play a role or dictate or control how the electronic programming guide got updated. That's the benefit of it. That was the desired sort. So it's not the idea of sending the metadata electronically together with the video as opposed to separately is not something that you claim is inventive? We don't. In fact, if they're sent differently, and that's the Fickle reference that's in page 49 of the blue brief. In the Fickle reference, the video actually went up over the satellite. The metadata went over the internet. They took separate paths. That's outside the scope of the claims of the patent. By denying the defendant's motion under 102 and 103, the district court found that this uploading the metadata in this instance. Now, the preamble was deemed to be limiting. The preamble talks about a method for enabling the navigating, controlling, uploading by the content provider. That's why – I mean, Your Honor, you look at me, and I understand where you're coming from. You look at me and you say, well, this element was old. I was doing this back when I was in college. But the patent office – first of all, issued the patent. The PTAB denied a third-party – I wrote one, by the way. I was not doing this when I was in college. Well, yeah. My TRS-80 judge wouldn't let me send anything over the internet. But the fact is that the patent office allowed this patent, again, in a post-grant review, finding that uploading the video along with the internet, along with the metadata, over an open online system. Again, this is just one aspect. I mean it boggles my mind. I mean one of ordinary skill in the art, reading this patent, there are a lot of detailed how, a lot of instructions on how to do it, how to reach the claim. They aren't just a recitation of the means sought. They are a detailed how. And I don't want to throw them again, but I mean linking the title, converting, all of those things. I mean they may be old in the art, but there's no evidence in the record sufficient. This was a summary judgment motion. We were denied the opportunity to go to the jury on this issue after the judge had ruled against the 102 and 103. I will make one other comment about this. Okay. We're out of time. One sentence. We'll give you one more sentence. Can I use semicolon? Yes. Your Honor, this thing about what I said about the web-based content management server, the question was what elements here were not found in the art. That was the question. After the judge denied their 102-103 motion and found that uploading along was novel, the web-based content management server, even though it's an old server, it performed a novel function. Thank you. Thank you. We have that argument in mind. It's an important one. Thank you all. The case is taken under submission.